WABASH, ST. L. & P. RY. CO. v. CENTRAL TRUST CO. OF NEW YORK
and others.[1]

*(Circuit Court, E. D. Missouri.   October 2, 1884.)*

1. CONTRACTS OF RECEIVERS.
    Where a railroad company contracted for rails, but became insolvent and passed into the hands of receivers, before they were delivered, and in order to avoid litigation, and with the expectation of earning freight by transporting ores for the vendor, the *receivers* of the road *agreed to receive the rails at the* contract price and pay for them at a specified time, though the contract price was more than the rails could then have been purchased in the market for, and the rails were delivered; but upon its thereafter appearing that there was no hope of earning anything in transporting freight for the vendor, said receivers declined to pay the agreed price, *held* that they were bound to comply with their obligation.
2. SAME.
    *Semble* that a court should not authorize or direct its receivers to enter into obligations which the necessities of the case do not absolutely require, but that when entered into with authority their obligations should be strictly fulfilled.

## In Equity.

[1] Reported by Benj. F. Rex, Esq., of the St. Louis bar.

*Henry Hitchcock,* for receiver of Ore & Steel Co.
*Wells Blodgett,* for receivers of Wabash, St. L: & P. Ry. Co.
*Wager Swayne* and *Henry F. Kent,* for complainant.
*Butler, Stillman & Hubbard,* for defendants.

BREWER, J., (*orally.*)   In the case of *The Receiver of the St. Louis Ore & Steel Company* v. *The Wabash Railway Company* application was made for an order on the receivers of the Wabash to pay the balance due upon contract for steel rails delivered.   It appears that, prior to the passing of the ore and steel company and the Wabash Railway Company into the hands of receivers, a contract for steel rails was made between the Missouri Pacific Railway Company and the ore and steel company, which, as to 12,000 tons, was accepted by the Wabash road.   After the Wabash Railway Company passed into the hands of the receivers, the question came up as to the carrying out of that contract.   Without going through the prior details of the transaction, it appears that, after the receiver of the ore and steel company was appointed, some hesitation or some objection arose in regard to the matter, and the agent of the receiver gave a letter in reference to 2,200 tons, for which an order was then outstanding, that the receivers would pay for these by the thirteenth of the ensuing month, after their delivery.   The rails were delivered and partial payment made, and the question is as to the payment of the balance under that delivery of 2,200 tons and that letter of the agent.   The receivers hesitate to make the payment, and, I think, very properly, because the contract price of these rails is somewhat in excess of what those rails could have been contracted for at the time the receivers were appointed; and because, also, there was back of this contract an understanding and expectation that the Wabash would receive profits to itself from the transportation of ore from the ore and steel company.   The latter expectation has, for the present, at least, failed.   There is also back of the appointment of the receivers an outstanding claim against the ore and steel company for freight, more or less.

Now, technically, a claim against the company prior to its insolvency, does not become a claim which the receiver can pay by diverting the property of the corporation placed in his hands.   The receiver of the ore and steel company cannot, of course, take the property of that corporation and pay one creditor and not another.   Neither can he, by entering into contract with such creditor, enable that creditor, by way of offset, to secure the payment of its debts, so that technically this claim as to freights, existing before the appointment of the receiver, does not become an offset to the claim for rails delivered by the receiver subsequent to his appointment; and still I can understand very well, and appreciate very fully, why the receivers of the Wabash feel a delicacy in regard to this matter; because parties ignorant of the real facts of the case might say, "How is this ?   You reaffirmed a contract made before your appointment, for the purchase of rails at a

larger price than to-day they can be purchased." And yet it must be borne in mind that these receivers had this question to meet; that is, if they repudiated that contract and said, "We will take no more rails under that contract," they exposed the property in their hands to an action for breach of contract, and for any damages that might be recovered under that contract. They felt also, that there was underlying this contract the idea that the Wabash would make something which would justify them and justify the road in executing that contract in the transportation of the ore of the company.

Now, I do not wonder that they hesitate. These gentlemen took charge of the Wabash road under circumstances of great embarrassment, finding the property *subject* to many unfortunate alliances, and burdened with various fixed and floating obligations, and have managed it with such success and prudence as to receive the merited encomiums of all. They are doubtless anxious to continue this success, to pay only those claims which ought to be paid, and to rescue the property from its embarrassments. So they appeal to the court in this matter for advice and direction, stating fully and frankly their objections. But it stands in this light to my mind. It was not a condition, a part of the contract, that these rails should be paid for in freight. There was an expectation which every business man may act upon in determining his dealings, but it was not a part of the contract, and they cannot repudiate the contract they made under the idea that they are disappointed in the profits incidental to or outside of the contract. So that I think the court ought to affirm the obligations which they entered into to pay for these rails at the time they specified.

And in this conclusion permit me to say generally in reference to receiver's obligations, I think the court should be very slow in authorizing or directing its receivers to enter into obligations; none should be created which the necessities of the case do not absolutely require. It is not the function of the court to go into the business of railroading or manufacturing, and have property on its hands, continued there indefinitely. Whenever, from the circumstances of the case, it is found necessary to take possession of property, it should preserve it and manage it so far as is necessary to keep it intact and free from loss or injury; and if need be, in order so that it may issue receivers' certificates, or direct the receivers to issue other obligations. Whenever it does so I think it is the imperative duty of the court to see that these obligations, thus authorized or directed, are held sacred to the very letter and spirit; that there should not be anything for outside litigation, but that the court, having authorized or directed these obligations and contracts to be entered into, should see to it that they are sacredly performed; and though afterwards it may seem that these obligations were unfortunately created, or without sufficient consideration, still there is no duty more sacred upon the court than to see that these obligations are kept.

So far as it comes within my jurisdiction through the circuit, I shall be very slow and reluctant to authorize any obligation to be entered into by receivers to become superior to existing liens, but whenever they are authorized and are entered into I shall be as careful as man can be to see that those obligations are kept to the very letter. I think that any person who deals with the officers of this court as to certificates or contracts should feel certain that there is no more sacred obligation than that upon the part of the court to see that these contracts are carried out in letter and spirit, so that any one dealing with them can depend upon them.

In that view I am constrained to sustain the petition of the receiver of the ore and steel company. There is also the obligation upon the part of the receivers of the Wabash road for the payment of interest on receivers' certificates. In reference to the details of the management of that receivership I am not so familiar as my brother TREAT; and while I have expressed my general views in reference to these matters, it has been agreed between us that he, being more familiar with the details, shall express his views upon that branch of the case.

See S. C. *infra.*