FARMERS' LOAN & TRUST Co. *v.* BURLINGTON & S. W. RY. Co. and others.

*In re* NEUMAN and others.

*(Circuit Court, W. D. Missouri.   December 10, 1887.)*

RECEIVER—SALE UNDER CONTRACT WITH—ENFORCEMENT.

Intervenor had a lien on a line of road leased by the defendant, which lien defendant agreed with its lessor to pay. Defendant made the leased portion a part of its own line, and placed a mortgage on the whole line. The road went into the hands of a receiver, who, acting under an order of the court, made a contract with the intervenor to purchase his interest, and pay him from the proceeds of the sale of the road under the mortgage. The sale was made and conditionally confirmed. The claim of intervenor not having been paid, he applied for an order setting aside the sale. *Held*, that the contract with the intervenor having been made by the order of the court, the court is bound to enforce it. The sale should be set aside, and the receiver placed again in possession.

The following are the principal facts: Prior to 1872 the Lexington, Lake & Gulf Railroad Company, a corporation organized under the laws of the state of Missouri for the purpose of building a railroad from the city of Lexington southward, had expended large sums of money in grading and tieing a portion of its road, and upon such road was an existing lien of something over $10,000, evidenced by a note and trust deed, and given for liabilities incurred in its construction. In that year it leased its road in an incomplete condition to the Burlington & South-Western Railway Company. The latter united this leased road with that portion of its own road running northward from Lexington to Unionville, making it one property and line of road with one common stock and one franchise, and known as "the Linneus Branch of the Burlington & South-Western Railway Company." Upon this Linneus branch in its entirety was placed a mortgage of $1,600,000. By the term of a contract entered into between the parties about a year after the lease, as well as after the execution of said mortgage, the lessee agreed to pay the liabilities of the lessor to the extent of $20,000, which included, as admitted, the debt above described. That debt became, by transfer, the property of the intervenors. In 1877 certain proceedings were had, by which, as it is claimed, this deed was foreclosed, and the legal title to the road upon which it had been given, to-wit, the road south of Lexington, vested in the intervenors. In the mean time, default having been made in the payment of the coupons on the $1,600,000 of bonds, a suit had been commenced in this court to foreclose the mortgage. The intervenors were not made parties to that suit. A receiver was appointed, who took charge of the whole line, and in April, 1876, a decree of foreclosure was entered, but no sale was made until 1880; the road in the mean time being operated by the receiver. In 1879 the intervenors, who claimed to own that portion of the road south of Lexington, entered into negotiations with one Brown for the sale of it to him for $50,000, whereupon the receiver obtained from this court an injunction restraining the parties from interfering with his possession, which injunction broke up the negotiations. Thereafter the receiver entered into negotiations with the intervenors for the purchase of their claim and interest. Before these negotiations were consummated, the receiver applied to the court for authority to issue receiver's certificates, to amount not exceeding $500,000, for the purpose of completing the road south of Lexington, and at the same time, and by the same petition, applied for authority as follows:

"Your petitioner also asks for authority to settle and adjust, by payment or purchase, any claims against said Lexington, Lake & Gulf Railway Company which may seem to be prior or adverse to the claims of the Burlington & South-Western Railway Company under the contract by which said Lexington, Lake & Gulf property was acquired."

Upon this petition, the receiver obtained authority to issue such certificates, and also the following authority in reference to the purchase of claims:

"And the said receiver is further authorized and directed to settle and adjust, by payment or otherwise, any outstanding claims against the Lexington, Lake & Gulf Railway Company under the contract before mentioned, and to purchase in any outstanding or adverse lien, or title to any portion or all of said property, and any right or title so acquired to be conveyed to him, as receiver, for the benefit of the parties in interest herein."

The authority to issue receiver's certificates provided that those certificates should be a first and specific lien only upon that part of the road south of Lexington. In fact, no receiver's certificates were issued, and nothing done towards the completion of that part of the road; but in March, 1880, a contract was made between the receiver and the intervenors by which the latter sold their claims and interest for $17,750. That contract provided for payment by the receiver out of the money coming into his hands from that part of the road south of Lexington, or from the sale of receiver's certificates which had been previously authorized as above stated, or from any earnings of that portion of the road, or arising from the sale thereof under the decree heretofore entered. On the thirtieth of November, 1880, the road as a whole, and without any separate appraisement of the two parts south and north of Lexington, was sold for $1,000,000, payment of which sum was made in mortgage bonds, as authorized by the terms of the decree. On July 5, 1881, this sale was confirmed, with a reservation of power to make any further orders, decrees, and directions in respect to the property, and with regard to any claim, right, interest in, or lien upon it. And now the claim of the intervenors not having been paid as adjusted by the terms of said contract, they insist that, unless it be paid within some reasonable time, the order of confirmation should be wholly set aside, and possession of the entire road again taken by the court. On the other hand, while it is conceded by the receiver and the purchasers at the sale that the intervenors have a prior lien upon that part of the road lying south of Lexington, they insist that the only order should be one fixing the amount of such lien, and decreeing a sale of that portion of the road for its satisfaction.

*J. W. Noble* and *G. F. Davis*, for intervenor.

*G. W. Smythe*, for the railroad company.

BREWER, J. The question is as to the duty of a court in respect to a contract made by its receiver under its directions. The theory of the one side seems to be that the issue of receiver's certificates, or the execution of other similar obligations, simply gives to the holder a lien which he may enforce in any of the ordinary methods of judicial foreclosure. He is not a party, must intervene if he wishes to insist on payment, and, intervening, occupies the position of any other lienholder. He has advantages in that his priorities are judicially declared in advance, but beyond that, nothing. Thus it is conceded that the intervenors are now in court, that they have a prior lien on the road south of Lexington, and that the court may adjudicate its amount, and order a sale therefor. But all that any lienholder may acquire. The inter-

venors might have done this before their contract with the receiver. Did that profit them nothing? On the other hand it is insisted that it is the duty of the court to see that contracts made by its orders are performed; that it ought not to remit the holder of such a contract to the remedies of lien or debt holders; but on the mere suggestion of omission or failure itself, take measures to secure performance, and such measures as will most certainly and promptly secure it. In other words, it owes to the holders of its contracts, not the duty merely of providing a forum in which such holders may enforce performance; it owes performance. To that end it should continue its receivers in office, and retain possession of the property until every contract has been fully performed, and if purchasers of the property fail to discharge all the obligations it has placed upon such property, it should not let the purchase stand. The condition of a final and absolute confirmation is the satisfaction of all such obligations. Here a sale has been conditionally confirmed. An obligation cast by the receiver under orders of the court remains unpaid. The confirmation should not be made absolute, or the property passed from the control of the court, with that obligation outstanding. I agree with the last-named views. The court should be chary of promise, but eager of performance; careful not to burden property in its possession with obligations, and equally careful to see that every obligation is discharged before that possession is finally surrendered. It owes performance, and should assume all its burdens, and not turn the holder of its contracts off with simply the assurance that he has a valid lien which he may foreclose. The confirmation which was entered was only conditional and with a reservation, such as gives the court still full control. *Burnham* v. *Bowen*, 111 U. S. 776, 4 Sup. Ct. Rep. 675.

Doubtless the court might, prior to the sale, have modified the decree so as to provide for separate sale of the two parts of the road lying respectively north and south of Lexington; in which case, even if the rights of the intervenors had not been protected by the purchasers, only the sale of the latter part need have been disturbed. But the sale was made of the road as a whole, and there is nothing before me to justify an apportionment of the proceeds. Counsel for the receivers and purchasers say that the road south of Lexington had ceased to be of any value, and that to set aside the sale of the whole, unless this debt, chargeable only upon a valueless part, is paid, would simply be coercing the purchasers and owners of valuable property to pay for other property which they do not want. Assuming it to be valueless, although it is in evidence that $600,000 was expended in work upon it, and still there are strong equities why the intervenors should not be remitted to a foreclosure of their lien, and some equities in favor of charging their debt upon the entire road. This now claimed valueless part was valuable enough to be included in the mortgage, the decree, and the sale. When negotiations were pending for a sale by the intervenors, the receiver, representing the entire properties, deemed it of sufficient value to interfere by injunction, break up the negotiations, and prevent the intervenors from realizing on their claim. Subsequently he deemed it of sufficient value

to apply for and obtain authority to borrow $500,000 on receiver's certificates to complete the road, and further authority to purchase the claim of intervenors.    After thus baffling and delaying them, it may not be inequitable to hold that the road, as a whole, should bear the burdens and losses of delay.    But it is unnecessary now to determine absolutely the rights of the parties.    It is enough to hold that the sale of the property as a whole should not stand, with this receiver's obligation on a part unsatisfied.    The order will therefore be that the order of confirmation and the sale be set aside, and the receiver directed to take possession of the property, unless within 90 days the claim of the intervenors be paid. If it be paid, the order of confirmation will be final.