**UNION TRUST & SAVINGS BANK et al. v. SOUTHERN TRACTION CO. et al.**

(Circuit Court of Appeals, Seventh Circuit. October Term, 1921. On Petitions for Rehearing, September 13, 1922.)

Nos. 2748, 2749, 2786, 2821, 2825, 2826, 2875–2877.

1. **Appeal and error ⟜994(1)—Circuit Court of Appeals accepts master's estimate of credibility of witnesses who testified orally.**

In receivership proceeding, the Circuit Court of Appeals will accept the master's estimate of the credibility of witnesses who testified orally before him.

2. **Receivers ⟜128—Holders of duly authorized receivers' certificates duly issued to actual purchasers entitled to priority of payment from proceeds of sale of debtor's property.**

In receivership proceeding, the owners of receivers' certificates, if duly authorized for the preservation and maintenance of the property and duly issued to actual purchasers, would be entitled to priority of payment from proceeds of the sale of the debtor's property.

3. **Receivers ⟜117—Order for issuance of receivers' certificates held improvident and illegal.**

In receivership proceeding, order made before any lienholders had intervened authorizing receivers to issue certificates up to specified amount "from time to time as in their judgment they may deem necessary" *held* improvident and illegal since the court could not delegate the right to exercise discretion with respect to issuance of certificates.

4. **Receivers ⟜124—Placing of receivers' certificates in hands of principal contractor to use held illegal.**

Where court made illegal order authorizing receivers of railroad, one of whom was the principal contractor, to issue certificates "from time to time as in their judgment they may deem necessary," the placing of the certificates in the hands of the principal contractor to use constituted a secondary illegal assignment of discretion.

5. **Receivers ⟜128—Vendors' liens for unpaid balances on right of way contracts held entitled to priority of payment from proceeds of sale of railroad's property after payment of receivers' certificates.**

In receivership proceeding against railroad, vendors' liens for unpaid balances on right of way contracts *held* entitled to priority of payment from proceeds of sale of railroad's property next to receivers' certificates.

6. **Railroads ⟜151—Bonds issued to promoter held void.**

Where promoter of railroad caused the corporation to issue bonds secured by a trust deed of all property then owned and after-acquired, and caused corporation to pay him all the stock and all the bonds in consideration of his agreement to construct the railroad, and thereafter transferred the bonds to other contractor under agreement prohibiting other contractor from selling the bonds, and giving it a right merely to hold and use them as collateral, the bonds were void, except in the hands of bona fide holders for value.

---

⟜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

7. **Banks and banking ☜153—Deposit accepted for special purpose cannot be diverted to other purposes.**

A depositor has the right to tender a deposit for a special purpose, and, if a bank receives such a deposit, the officers of the bank have no right to divert the deposit to other purposes.

8. **Payment ☜36—Credits are to be applied in accordance with intent of parties.**

Application of credits involves the intent of the parties, which intent is to be gathered from the testimony concerning the sayings and doings of the parties.

9. **Payment ☜17—Note given seller, who reserved title under conditional sale contract, did not constitute payment.**

Where conditional sale contract reserved title in seller, a note given seller for a part of the price was not payment of the price, but was evidence of part of the unpaid purchase price.

Appeals from the District Court of the United States for the Eastern District of Illinois.

Creditors' bill against the Southern Traction Company. Receivers were appointed for the company, and intervening bills and petitions were filed by certain creditors, involving controversies between the Union Trust & Savings Bank, trustee, and others, and the Southern Traction Company and others, between John A. Hamilton, trustee, and others, and the Southern Traction Company of Illinois and others, between the Kenwood Bridge Company and Jared Y. Sanders and others, between the Marquette National Fire Insurance Company and Jared Y. Sanders and others, between the Naugle Pole & Tie Company and Jared Y. Sanders and others, between the Western Electric Company and Jared Y. Sanders and others, between the Kansas City Bridge Company and Jared Y. Sanders and others, between the Myers Construction Company and Jared Y. Sanders and others, and between Philip Gruner & Bros. Lumber Company and Jared Y. Sanders and others. From the decree rendered, the Union Trust & Savings Bank, trustee, and others, John A. Hamilton, trustee, and others, the Kenwood Bridge Company, the Marquette National Fire Insurance Company, the Naugle Pole & Tie Company, the Western Electric Company, the Kansas City Bridge Company, the Myers Construction Company, and the Philip Gruner & Bros. Lumber Company separately appeal. Affirmed.

John C. Slade, of Chicago, Ill., for appellants Union Trust & Savings Bank and others.

P. K. Johnson, of Belleville, Ill., for appellants Hamilton and others.

Shepard Barclay, of St. Louis, Mo., for appellants Kenwood Bridge Co., Naugle Pole & Tie Co., Western Electric Co., Kansas City Bridge Co., and Myers Const. Co.

Hugh O'Neill, of Chicago, Ill., for appellant Marquette Nat. Fire Ins. Co.

F. M. Lowes, of Chicago, Ill., Bruce A. Campbell, of East St. Louis, Ill., John R. Cochran, of Chicago, Ill., and McGlynn & McGlynn, of East St. Louis, Ill. for appellees Southern Traction Co. and others.

☜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

F. M. Lowes, of Chicago, Ill., Bruce A. Campbell, of East St. Louis, Ill., John R. Cochran, of Chicago, Ill., Geo. B. Logan, of St. Louis, Mo., and John C. Slade, of Chicago, Ill., for appellees Sanders and others.

Before BAKER, EVANS, and PAGE, Circuit Judges.

BAKER, Circuit Judge. These appeals grew out of the failure of an electric railroad project. On a creditors' bill the District Court appointed receivers, and thereafter intervening bills and petitions were filed by the trustee for bondholders, by the principal contractor and subcontractors to enforce mechanics' liens, by the trustee in bankruptcy of the principal contractor to secure the rights of the bankrupt on behalf of creditors, by landowners to get the balance of purchase money, by parties who advanced money to the promoter to buy rights of way, by the receiver of an insolvent bank for an accounting with the principal contractor and the trustee in bankruptcy, by the holders of receivers' certificates, and by other creditors.

All these controversies were heard fully by the Master in Chancery. The printed record here comprises 4,480 pages, of which 276 pages are occupied by the master's report. Next, these matters were completely reviewed by the chancellor, who entered a decree covering 112 pages of the record, fixing amounts and priorities, and ordering a sale of the property. In this court we allowed extra time for an elaborate oral presentation. To verify our conclusions in conference, the writer hereof has examined the arguments advanced in 1,048 pages of briefs, and has referred to the disputed parts of the decree, the report of the master, and the evidence. In order to give members of the profession who have not appeared in these appeals an understanding of the various issues, it would be necessary to set forth all the material facts as we find them, because the law of the case can only arise from the facts. As this is impossible without having the publisher set apart a volume, or a major part thereof, we address only the parties and their counsel, believing that their acquaintance with the record and briefs will enable them to gather from this memorandum the bases of our decision.

I. Motions to dismiss appeals are overruled, because (1) they were taken in open court, in connection with the entry of the decree, and were consolidated in the District Court and here; and (2) all necessary opponents of each appellant were cited to appear and have been heard on the merits.

[1] II. Witnesses testified orally before the master. We accept his estimate of credibility. His finding of secondary facts from primary facts we accept as inferences that might reasonably be drawn. On this view of the facts of the case, we affirm the decree against each appellant on one or more of the grounds of law or equity set forth in the briefs and arguments of opposing appellees.

[2] III. First in order of payment from the proceeds of the sale would come receivers' certificates, if duly authorized for the preservation and maintenance of the property and duly issued to actual purchasers.

[3] (1) An order on the petition of the receivers who were appointed on a general creditors' bill, the petition being presented and allowed the day after their appointment and before any lienholders had intervened, and the order authorizing the receivers to issue certificates up to $500,000 "from time to time as in their judgment they may deem necessary," was improvident and illegal. The judgment and discretion legally to be exercised were the court's, and could not legally be delegated.

[4] (2) Three receivers, one of whom was the principal contractor, signed the certificates and placed them in the hands of the principal contractor to use. This constituted a secondary illegal assignment of discretion.

(3) The principal contractor used the certificates as collaterals to secure the payment of antecedent debts. If any creditor was led by misrepresentations to forego action to secure a mechanic's lien, he might possibly have an action against the receiver; but that would not create in equity a lien upon the property in which actual lienholders were concerned.

Appellant in case 2821, holder of some of these void certificates, was allowed a lien to the extent that its money was traced into the receivers' improvement of the property, on an equality with others whose money, materials or labors entitled them to liens. As no other appellant has assailed that part of the decree, it is of course allowed to stand.

[5] IV. Next to receivers' certificates in order of priority would come vendors' liens for unpaid balances on right of way contracts. Many such liens were allowed to actual proprietors whose lands were taken, and no appellant questions the correctness of the decree in that respect.

Appellants in case 2749 claim that they should be put on the same footing. They were not proprietors whose lands were taken. Their relations with the promoter led them to agree to aid him (or his paper railroad company) by advancing money to be used in procuring rights of way from the owners of lands. They were not merely to be repaid their advances, whether actually applied to land purchases or not, but they were additionally to have substantial profits from the enterprise if the London syndicate (the only ultimate foundation of the project) should carry out its underwriting of the railroad bonds. They did not buy any of the lands. The promoter spent the money. Some deeds were taken in appellants' names; others, in the name of the company. The decree treats all of appellants' money that actually went into the railroad property as one sum, and gives them a lien on an equality with the liens of others whose money, materials or labors created the property. In a sense appellants made themselves partners of the promoter in the right of way part of the enterprise. For the promoter's diversions of their money, contrary to his agreement that all titles should be taken in their names, they might have rights of action against him; but that would not create in them vendors' liens on lands they never owned. As no party by cross-appeal has challenged that part of the decree which awards a lien to appellants for

moneys used by the promoter in taking title in the company's name, it is allowed to stand. But appellants must accept their decree as it was made, that is, as an entirety; for neither in briefs nor by references to the record have we been afforded the means, if any exist, for determining how much went into deeds in appellants' names, how much into deeds in the company's name, and what became of the $18,000 that did not go into any deeds.

[6] V. As to the trust company's intervening bill to foreclose the trust deed to secure $1,500,000 of railroad bonds, an outline of the situation is this: The promoter organized a company with $2,500 capital, probably enough to cover charter fees and expenses. Having procured his charter, he had his company vote to issue $1,500,000 of stock and $1,500,000 of bonds secured by a trust deed of all property then owned and after acquired. When these stock and bond papers had been printed and signed and the trust deed recorded, the promoter had his company contract with him to build the railroad. In consideration of his undertaking he had his company agree to give him in payment all the stock and all the bonds. And thus, at the very start, he came into possession of the bonds. By novation, or a tripartite arrangement, the Lorimer & Gallagher Company came in as principal contractor and received the bonds from the promoter.

(1) The Constitution and statutes of Illinois may not thus be defied.

(2) Apart from Constitution and statutes, equity must hold that the printing press and fountain pen are not creators of bond values. Yet the promoter and principal contractor took and handled the bonds as though they had been issued by the railroad company for full value concurrently received.

(3) The trust company had no standing except to protect bona fide holders of bonds for value. There was none.

(4) Inherently the bonds were worthless, except when and as value was injected into them. Lorimer & Gallagher Company, under its contract with the railroad company, had no right to sell the bonds. It had a right to hold and use them as collateral, at 60 cents on the dollar, as the work progressed and the contractor became entitled to partial settlements. There is no showing as to what bonds, if any, were thus set off to the contractor as the work progressed.

(5) The bonds were placed with the La Salle Street Bank for safe-keeping. It had knowledge of the limitations on Lorimer & Gallagher Company's right of disposal. In pretending to sell bonds to itself, it violated its duty as custodian and the limitation on the contractor's authority. In holding bonds as collateral, it was its duty, under the circumstances, to show that the contractor's conditional right to use them as collateral had matured.

VI. The principal contractor and the subcontractors were properly granted liens under the railroad lien statute of Illinois (Hurd's Rev. St. 1921, c. 82, §§ 7-14).

VII. That part of the decree which adjudges the state of the account between the receiver of the La Salle Street Bank and the trustee of Lorimer & Gallagher Company, bankrupt, is approved.

(1) All criticisms based on credibility of witnesses and on inferences deducible from primary facts are overruled.

[7] (2) A depositor has the right to tender a deposit for a special purpose. If a bank receives such a deposit, the officers of the bank have no right to divert the deposit to other purposes.

[8] (3) Application of credits involves the intent of the parties. Such intent is to be gathered from the testimony concerning the sayings and doings of the parties. And here again credibility comes in.

(4) As between the La Salle Street Bank and the Lorimer & Gallagher Company, depositor and borrower, Munday, the chief executive officer of the bank, was the bank.

[9] (5) The $70,000 equipment note was not payment, but was evidence of part of the unpaid purchase price, the whole of which was secured in the conditional sale contract by the reservation of title in the seller. When the car company acted on its reservation of title, and took and leased the cars to the receivers, and then retook and sold the equipment, it lost the right to hold the note against the Lorimer & Gallagher Company, maker. This was before the La Salle Street Bank, under its precedent executory contract to purchase the note from the car company, made its alleged purchase.

(6) The foregoing five paragraphs cover what we regard as the main features of the accounting. Others are not deemed to require specific mention, and are disposed of under section II above.

The decree is affirmed.

## On Petitions for Rehearing.

PER CURIAM. All petitions are overruled without qualification, except those of holders of receivers' certificates. As to them what was adjudicated by the District Court and affirmed by this court was that the void certificates created no liens upon the railroad property. The trustee in bankruptcy of the principal contractor is to receive a large part of the proceeds of sale. Holders of receivers' certificates now claim that, even if they had no liens upon the property, the dealings between the principal contractor and them gave them an equitable lien or preferential claim against the trustee for payment out of what the trustee is to receive, ahead of general creditors. The trustee, representing the bankrupt and general creditors, and the holders of the certificates are all before the District Court in this cause. It may be more convenient and more equitable that the question of preferential claim against the trustee be determined in this cause.

The petitions of the certificate holders for a rehearing are overruled, with the qualification that what has been so far adjudicated shall not be a bar to their assertion of claims for preferential payment out of the sums otherwise payable herein to the trustee.