## UNION TRUST & SAVINGS BANK et al. v. HAMILTON et al.

(Circuit Court of Appeals, Seventh Circuit.  July 26, 1922.)

No. 3047.

I. **Receivers** ⊜⟿154(2)—**$18,000 fee to attorneys of receivers for railroad held not excessive.**

$18,000 fee for attorneys of receivers of railroad, covering a period of six years, during which the railroad was sold for $400,000, *held* not excessive.

2. **Receivers** ⊜⟿196—**Agreement between receivers held not to affect right to compensation.**

Where it was agreed, prior to appointment of receivers for railroad, that a certain person to be appointed was to be the operating receiver, and that the other two were to serve without compensation, the other two receivers were not by reason thereof precluded from recovering compensation for operating railroad after resignation of first receiver.

3. **Receivers** ⊜⟿48—**Interested persons should not be appointed.**

Great caution should be exercised in the appointment, as receivers, of persons interested as creditors or otherwise.

Appeal from the District Court of the United States for the Eastern District of Illinois.

Action between the Union Trust & Savings Bank, trustee, and others, and John A. Hamilton and others.  From the decree rendered, the former appeal.  Affirmed.

Francis M. Lowes, of Chicago, Ill., for appellants.

John E. Hamlin, of East St. Louis, Ill., for appellees.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

PAGE, Circuit Judge.  [1] As to the objection to the allowance of $18,000 fees for the receivers' attorneys, both the master and the court found that those fees were proper, and not excessive, and we also find that such allowance is abundantly sustained by the record.

[2] Several reasons are assigned why no fees should have been allowed to Receivers Trautmann and Hamilton, the most important of which is that it is claimed there is evidence to show that on March 5, 1914, the day before the appointment of the three receivers, Crane, Hamilton, and Lorimer, it was agreed by Lorimer, Hamilton, Trautmann, and others that three receivers were to be appointed, one of whom, Crane, was to be the operating receiver and have compensation for his services, but that the other two were to serve without compensation.  This conclusion seems to be based on Lorimer's statement that both Hamilton and Trautmann heard that proposition advanced, but said nothing.  No court order was made touching the matter of compensation at any time before the final settlement.

Crane served from March 6, 1914, to July 31, 1914, and received as compensation $2,500 and interest.  Lorimer resigned June 16, 1914, and Trautmann was then appointed.  No one succeeded Crane, and Hamilton and Trautmann continued to serve until the receivership was finally

⊜⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

terminated. The whole receivership covered a period of about six years.

The master found that Hamilton and Trautmann were not entitled to compensation before the resignation of Crane on July 31, 1914, but were entitled to be paid $13,500 for services subsequent to that time. The court approved the master's finding, but increased the amount of the fees allowed to Hamilton and Trautmann from $13,500 to $20,100, or $10,050 to each. The road was sold for $400,000. While the road was not operated after Crane's resignation, yet there were a great many things legitimately and properly required of and done by the receivers.

At the time of the meeting testified to by Lorimer, Trautmann was not then about to be appointed a receiver, nor was he, so far as the record shows, then under discussion. He was not under any obligation to speak upon the question as to whether he would or would not be bound by an agreement as to fees in case he was at some future time appointed. He was appointed four months afterward. Whether Hamilton was placed under an obligation to speak at that time makes no difference, because the conditions under which he and Lorimer were to serve, as claimed by Lorimer, were wholly changed by the resignation of Crane. There is no reason why a loose conversation like that testified to by Lorimer, and not covered by any order of court, should be held to be binding under the changed conditions shown.

[3] It is further urged that Hamilton and Trautmann were both personally interested in the receivership, and therefore should not be compensated. The facts as disclosed by the record with reference to the interests of Lorimer, Hamilton, and Trautmann indicate good reasons why, under ordinary circumstances, none of them should have been appointed. It appeared from a former appeal decided in this court (283 Fed. 50), involving the affairs of the Southern Traction Company, for which the receivers in question were appointed, and wherein practically all of the controversies related to the question of priorities, that two of the receivers in the litigation were the foremost contenders for priorities personal to themselves. There might be circumstances justifying the appointment of receivers similarly situated, but it should be done only under extraordinary conditions, and in all cases proper precautions should be taken to protect other creditors, wherever their interests conflict with those of the receivers. In this case, however, it appears that the personal interests of both Hamilton and Trautmann were well known to all of the creditors, especially by those here objecting. The receivers served for nearly six years without any objection whatever being made to the court.

The whole expense of the receivership may be considered, under all the circumstances, to be fair and reasonable, and justified upon the record.

The decree of the District Court is affirmed.