W. C. KLAGES et al., Appellees, v. A. E. FREIER, Receiver, et al., Appellants.

No. 44340.

August 5, 1938.

Rehearing Denied October 21, 1938.

Larson & Carr, for appellees.

Newman & Newman, for appellants.

Mitchell, J.—This is a suit in equity brought in Chickasaw County by the holders of certain notes, aggregating $5,700, against A. E. Freier, receiver of the Brown-Fallgatter Company, and Paul C. Cagley, praying for the foreclosure of a mortgage securing the payment of the said written instruments, and that the deficiency judgment, if any, be made a lien against the assets of the receivership.

The receiver filed answer, denying that he was liable for any deficiency judgment, and further contended that the trial court had no right, power, authority or jurisdiction to render any judgment against him other than to enter judgment on the notes and foreclosure of the mortgage.

The lower court found for the plaintiffs, rendered its decree foreclosing the mortgage, with judgment on the notes, ordered

a special execution to issue for the sale of the property, and adjudged any deficiency to be a first lien against the assets of the receivership pending in Black Hawk County.

The receiver, being dissatisfied, has appealed.

The evidence in the case is largely documentary and the material facts are not in dispute.

Under proper proceedings in the district court in and for Black Hawk County, A. E. Freier was duly appointed as receiver of the Brown-Fallgatter Company, Incorporated, which for some years prior had been engaged in the milling business, operating plants in Black Hawk and Chickasaw Counties. He posted the requisite bond, duly qualified as receiver, and assumed the duties of his office. At and prior to the appointment of the receiver a loan on the Chickasaw milling plant had been negotiated by the then owner thereof, in the sum of $10,000, to evidence which bonds were executed, secured by a trust deed on said mill. At the time the property came into the hands of the receiver there was still due on the indebtedness the sum of $6,500. The appellees in this case, who were the heirs of Charles Klages, deceased, held $5,700 of said indebtedness. In July of 1931 these bonds were due, and the appellant-receiver filed an application in the district court of Black Hawk County, wherein he set out that at the time he was appointed receiver, to wit, in August of 1930, the mill located at Old Chickasaw, in Chickasaw County, was encumbered by a trust deed, securing bonds in the amount of $10,000, and that there remained unpaid the sum of $6,500 on these bonds; that they were due; that $5,700 of the indebtedness was owned by the appellees; that he believed it to be to the best interests of the receivership that the indebtedness be paid and that he be directed and empowered to pay same by executing new notes, secured by a mortgage on the property, in the amount of $5,700. On July 28, 1931, upon this application, the district court of Black Hawk County ordered that the receiver pay such indebtedness by making a new loan in the amount of $5,700, secured by a mortgage on the mill in Chickasaw County, and that he execute four notes in the amount of $1,425 each, drawing interest at the rate of seven per cent. The receiver did this; he executed to the appellees four notes, each in the amount of $1,425, and duly signed by A. E. Freier as receiver of the Brown-Fallgatter Company, Inc. To secure these notes he executed a mortgage by himself as receiver, which

mortgage was duly recorded in Chickasaw County. On October 14, 1932, the receiver was authorized and empowered to sell the Old Chickasaw mill property to Paul C. Cagley, under a contract for deed, wherein the purchase price was $9,500, which was paid by the assumption of the mortgage in the amount of $5,700, the balance to be paid in cash on certain dates. The property was sold to Cagley, who paid to the receiver during the period of time the contract was in force approximately the sum of $2,800, which amount the receiver has retained. Difficulties arose in the operation of the mill and Cagley was unable to carry out the balance of the contract and defaulted thereon. On December 12, 1935, there having been default in the payment due the appellees, they filed written application in the Black Hawk County court, asking leave to sue the receiver in Chickasaw County for the amount due them on the four notes from the receivership, and to foreclose the mortgage securing the notes. On December 12, 1935, Judge A. B. Lovejoy, one of the presiding judges of Black Hawk County, made an order in said receivership proceedings, granting appellees leave to sue the receiver upon the notes and to foreclose the mortgage. Pursuant to said order of court the appellees filed petition in this cause, in equity, in Chickasaw County.

I. It is the contention of the appellant that the debt sued upon is not his obligation, but was rather the extension of the old mortgage, which was a lien against the property at the time the receiver was appointed and qualified, whereas the appellees contend that the notes and mortgage sued upon are the obligation of the appellant to repay money borrowed by him, as receiver, with the approval of the court.

There does not seem to be much disagreement in the authorities in regard to the question with which we are here confronted.

In 53 C. J., section 205, Receivers, we find the rule announced as follows:

"Borrowings and Advances.—The court may authorize the receiver, from time to time, to borrow money when necessary for the preservation of the property and the proper administration of the estate, and persons who lend or advance money to a receiver, under the authority of the court, in order to enable him to accomplish the purpose of his appointment, should be

reimbursed by him out of the funds of the estate. But while courts will be zealous to protect the rights of parties who may have furnished money for the preservation of the trust property, equal care will be observed that the property is not wasted by the receiver's improvident acts. So, before procuring or accepting any loan, the receiver should apply for and obtain authorization so to do, since he has no such power in the absence of special authority conferred upon him, and a loan procured without authority is not binding upon the court or the trust property; and the court will not sanction the borrowing of large sums without previous authorization, even though the money has been applied to pay expenses of the receivership. An order permitting the receiver to borrow money, which has not been carried out, will be annulled if the necessity for it disappears.''

In 23 R. C. L., Receivers, section 77, we read:

''Borrowing or Loaning Money; Executing Notes. A receiver has no right to borrow or loan money, unless specially authorized by the court, and if he loans money and loses it, he must stand the loss, unless the circumstances are peculiar. So although a receiver may have no right to borrow money, yet if he uses money borrowed by him to discharge a valid lien on the property committed to his charge, and acts in good faith in making the payment, it has been held that he is entitled to credit therefor as against the insolvent debtors who have received the benefit of the payment. A receiver authorized to buy material has no implied power to execute notes in payment therefor, and he is individually liable thereon, though both parties intend to bind the maker as receiver and not individually. Nor can such notes be reformed so as to speak the true intent of the parties, since a receiver has no responsible principal.''

In the case of Wabash, St. Louis & Pacific Railway Company v. Central Trust Company, C. C., 22 F. 269, at page 271, that court said:

''And in this conclusion permit me to say generally in reference to receiver's obligations, I think the court should be very slow in authorizing or directing its receivers to enter into obligations; none should be created which the necessities of the case do not absolutely require. It is not the function of the

court to go into the business of railroading or manufacturing, and have property on its hands, continued there indefinitely. Whenever, from the circumstances of the case, it is found necessary to take possession of property, it should preserve it and manage it so far as is necessary to keep it intact and free from loss or injury; and if need be, in order so that it may issue receiver's certificates, or direct the receivers to issue other obligations. Whenever it does so I think it is the imperative duty of the court to see that these obligations, thus authorized or directed, are held sacred to the very letter and spirit; that there should not be anything for outside litigation, but that the court, having authorized or directed these obligations and contracts to be entered into, should see to it that they are sacredly performed; and though afterwards it may seem that these obligations were unfortunately created, or without sufficient consideration, still there is no duty more sacred upon the court than to see that these obligations are kept.''

In the case of Farmers Loan & Trust Company v. Burlington & Southwestern Railway Company, C. C., 32 F. 805, at page 808, Justice Brewer, speaking for that court, said:

''The court should be chary of promise, but eager of performance; careful not to burden property in its possession with obligations, and equally careful to see that every obligation is discharged before that possession is finally surrendered. It owes performance, and should assume all its burdens, and not turn the holder of its contracts off with simply the assurance that he has a valid lien which he may foreclose.''

We find that the Circuit Court of Appeals, in the case of Colorado Wool Marketing Assn. v. Monaghan, 10 Cir., 1933, 66 F. 2d 313, has this to say, at page 315:

''The first duty of a court having possession of property is to preserve it for the litigants. The courts, state and federal, which had possession of these sheep, would have been grossly derelict in their duty if either had permitted the sheep to starve or to stray beyond recall. Jerome v. McCarter, 94 U. S. 734, 738, 24 L. Ed. 136; Union Trust Co. v. Illinois Midland Co., 117 U. S. 434, 454, 6 S. Ct. 809, 29 L. Ed. 963; Illinois Steel Co. v. Ramsey, C. C. A. 8, 176 F. 853, 864. In Wallace v. Loomis, 97 U. S. 146, 162, 24 L. Ed. 895, the court, speaking

of the authority conferred upon receivers to borrow money to preserve property in their possession, said: 'It is a part of that jurisdiction, always exercised by the court, by which it is its duty to protect and preserve the trust funds in its hands.' Necessary expenses incurred in the preservation of property while in the custody of the court should be paid before the court passes over the property or its proceeds to those adjudged to be entitled thereto. Feldman v. American Palestine Line, Inc., D. C., 15 F. 2d 94, opinion by Judge Thatcher, lately solicitor general; Brictson Mfg. Co. v. Close, C. C. A. 8; 25 F. 2d 794; Von Boston v. United Rys. Co. of St. Louis, C. C. A. 8, 8 F. 2d 826, certiorari denied 271 U. S. 665, 46 S. Ct. 475, 70 L. Ed. 1140; Union Trust & Savings Bank v. Southern Traction Co., C. C. A. 7, 283 F. 50, certiorari denied 260 U. S. 744, 43 S. Ct. 166, 67 L. Ed. 492; International Trust Co. v. United Coal Co., 27 Colo. 246, 60 P. 621, 83 Am. St. Rep. 59; Hanna v. State Trust Co., C. C. A. 8, 70 F. 2, 30 L. R. A. 201; Clark on Receivers, sec. 637.

"The case of Hanna v. State Trust Company has been frequently followed in other circuits. There Judge Caldwell laid down the general rule that a court of equity may not, over the objection of lienholders, subordinate a lien to the expenses of operating a private business in receivership; but in so doing he stated that expenses of administration, realization and preservation are not within the rule, adopting for that purpose the following language of the court in Raht v. Attrill, 106 N. Y. 423, 13 N. E. 282, 285, 60 Am. Rep. 456:

" 'The act of the court in taking charge of property through a receiver is attended with certain necessary expenses of its care and custody; and it has become the settled rule that expenses of realization, and also certain expenses which are called expenses of preservation, may be incurred under the order of the court on the credit of the property; and it follows from necessity, in order to the effectual administration of the trust assumed by the court, that these expenses should be paid out of the income, or, when necessary, out of the corpus, of the property, before distribution, or before the court passes over the property to those adjudged to be entitled.' "

We also quote from appellant's brief (at page 11):

"Where money is actually advanced to the receiver, on ap-

plication to the court for authority to borrow money, it becomes an expense of administration, and must be paid to the lender as a preference.''

Thus we find that the appellant concedes if this record shows upon application to the court the receiver was authorized to borrow this money, it must be paid out of the expenses of administration and that the lender is entitled to a preference.

We turn to the record to ascertain the facts.

First, we find that the appellant, as receiver, filed an application, asking for permission to pay the indebtedness secured by the old trust deed, to execute a new mortgage on the property, and to make and execute notes on behalf of the receivership. The court upon that application entered an order, from which we quote the material parts:

''It is ordered that the Receiver pay off such indebtedness; and make new loan in the sum of Five Thousand Seven Hundred Dollars ($5,700.00) secured by mortgage on the land and appurtenances at Old Chickasaw, Chickasaw County, Iowa, mortgage to be payable in five years from its date, securing four notes, in the sum of Fourteen Hundred Twenty-five Dollars ($1,425.00) each, at 7% per annum, payable semi-annually; continue the abstract to date; pay the accrued interest on the old loan, and such other expenses in connection therewith as may be necessary, all as prayed in said application.''

It should be noted the court specifically provided in the order that it was a new loan in the sum of $5,700 that was being made, to be secured by a new mortgage. The appellant as receiver did execute new notes, signed by A. E. Freier, receiver of the Brown-Fallgatter Company, Inc. These were delivered to appellees in this case, and the old instruments which they held were surrendered and cancelled. Shortly after making this new loan the appellant sold the property for $9,500, under contract, upon which there was paid into the receivership approximately the amount of $2,800, which sum is still in his hands as receiver. He took the cash he received for the equity saved by the execution of the new notes and mortgage and it is now a part of the assets of the receivership. These facts preclude appellant from claiming that the receivership was in no way benefited by the new loan made by the appellees. In addition, by the making of

the new loan the right of the appellees to foreclose and collect upon the old obligations which they held and owned, was terminated.

Clearly, under such a record we can come to no other conclusion than that the appellees under order of court loaned their money to the receiver, and that this indebtedness became an expense of administration which must be paid ahead of general claimants. The fact that it may now seem that this obligation was an unfortunate contract on the part of the receiver, affords him no excuse for seeking to avoid payment. Courts and officers of courts should be especially diligent in meeting the obligations of their contracts.

II. Appellant claims that the Chickasaw County court had no right, power, authority or jurisdiction to order and determine the status of the liability of the receiver for the deficiency judgment.

With this we cannot agree. Before this action was commenced the appellees filed an application in the district court of Black Hawk County, asking for permission and authority to sue the receiver upon the notes and to foreclose the mortgage securing the same.

In the case of Manker v. Phoenix Loan Association, 124 Iowa 341, 100 N. W. 38, this court said at pages 343, 344, 100 N. W., at page 38:

"In Allen v. The Iowa Central Railroad of Iowa, 42 Iowa 683, we held that the failure to obtain leave to sue in such cases was not a bar to the jurisdiction of the court of law, 'and no defense to an otherwise legal action on trial.' To the same effect are Kinney v. Crocker, 18 Wis. 74; Paige v. Smith, 99 Mass. 395; Hills v. Parker, 111 Mass. 508, 15 Am. Rep. 63; Tobias v. Tobias, 51 Ohio St. 519, 38 N. E. 317; 23 Am. & Eng. Enc. 1125, and notes.

"But if this were not the established rule in this state, it is clear that when a receiver has appeared and defended, and, as in this case, has invoked the affirmative judgment of the court, he cannot, after an adverse decision, question the jurisdiction to which he has voluntarily submitted or himself invoked. Sterritt v. Robinson, 17 Iowa 61; Cooley v. Smith, 17 Iowa 99; Elkhart Car Works v. Ellis, 113 Ind. 215, 15 N. E. 249; Mulcahey v. Strauss, 151 Ill. 70, 37 N. E. 702. Moreover,

when the receivers voluntarily appeared and submitted to the jurisdiction of the court, it will be presumed that they were authorized to defend, and such presumption will obtain until the contrary is affirmatively shown. The presumption is that a general receiver has authority to sue, and, when the receivers in these cases filed petitions asking the foreclosure of the mortgages given to the association, it was an invitation to the court to settle all differences between themselves, as receivers, and the plaintiffs, growing out of the transactions connected therewith.''

In the case at bar permission was secured from the court in which the receivership was pending, to wit, from the Black Hawk County court. That court had a perfect right to enter the order for the debt was contracted by the receiver under order of court, for the benefit of the receivership. The receiver himself appeared in the Chickasaw County court. The Black Hawk County court, being the court in which the receivership was pending, having given authority to commence the suit in Chickasaw County, the latter mentioned court had the right to determine the questions involved.

In view of this opinion, the motion of appellees to dismiss this appeal is overruled.

Other errors are urged, all of which have been given consideration.

It necessarily follows that this case must be, and it is hereby affirmed.—Affirmed.

SAGER, C. J., and ANDERSON, KINTZINGER, DONEGAN, STIGER, and MILLER, JJ., concur.

RICHARDS, J., dissents.